**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

**Dated: September 14 2009**

# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **In Re** | ) | **Case No.   08-36417** |
| | ) | |
| Michael L. Bowes | ) | **Chapter 13** |
| Kathleen L. Bowes | ) | |
| | ) | |
| **Debtor(s).** | ) | **JUDGE MARY ANN WHIPPLE** |

## ORDER

    This case is before the court on the Chapter 13 Trustee's Motion to Dismiss Based Upon Debtor Exceeding Chapter 13 Unsecured Debt Limit under 11 U.S.C. § 109(e) ("Motion") [Doc. # 17].

    The Motion asserts that Debtors have noncontingent liquidated unsecured debt as of the date of the filing of the petition exceeding the $336,900 Chapter 13 eligibility limit of 11 U.S.C. § 109(e). *See In re Pearson*, 773 F.2d 751 (6th Cir. 1983); *In re Odette*, 347 B.R. 60 (Bankr. E.D. Mich. 2006).[1] The Trustee's argument is based on Debtors' original schedules and the assertion that some of the

---

[1]

    The Motion also raises good faith issues in both filing the case, *see* 11 U.S.C. § 1325(a)(7), and proposal of Debtors' plan, *see* 11 U.S.C. § 1325(a)(3). The good faith issues are being separately addressed through the confirmation process in an ongoing evidentiary hearing as the Trustee is not presently recommending confirmation irrespective of the resolution of the § 109(e) eligibility issue.

debt listed as contingent and unliquidated on Debtors' schedules, which would be excluded from the eligibility determination, is improperly designated. The Trustee includes in his calculation Debtors' original Schedule F non-contingent, liquidated debt of $64,866.94.[2] The Trustee also argues, and the court agrees in principle, that Debtors' Schedule D secured debt should be treated as unsecured to the extent secured creditors' claims exceed the value of their collateral. *In re Groh*, 405 B.R. 674 (Bankr. S.D. Cal. 2009); *In re Fuson,* 404 B.R. 872 (Bankr. S.D. Ohio 2008). *Contra In re Holland*, 293 BR 425, 428 (Bankr. N. D. Ohio 2002). Bifurcation of the Schedule D debts into secured and unsecured amounts adds an additional $269,537.63[3] to the eligibility limit total. Debtors have not designated any of the Schedule D debts as unliquidated or contingent, nor has any basis been presented upon which they could properly be so labeled. These liquidated, non-contingent unsecured debts add up to $334,404.57 and do not exceed the § 109(e) statutory eligibility limit. However, the Trustee also argues that the total should include an additional $145,562.05 in debt listed on Schedule F as contingent and unliquidated, but which he asserts should not be scheduled as contingent and unliquidated because the co-debtor entity is identified on Schedule B as having zero value and, as to one $9,500 debt included in the $145,562.05 amount, it is the subject of a state court judgment against Debtors. If all of these debts are properly included as Debtors' liquidated, noncontingent unsecured debt, the total is $479,966.62 and Debtors are ineligible for Chapter 13 relief. Indeed, this amount is stated in paragraph 8 of Debtors' proposed Chapter plan as their unsecured debt.

Debtors oppose the Motion, asserting that the amounts originally scheduled as contingent and unliquidated are properly excluded as evidenced by their amended schedules, and by pointing to proofs of claims as filed (or, more significantly, not filed) and claims as allowed now that the claims bar date has passed and objections to claims have been determined. Debtors amended their Schedule F on March 16, 2009. [Doc. # 34]. The amended Schedule F shows total unsecured debts of only $60,454.96, of which only the $9,500 debt to the Shoppes at Perry Junction is listed as contingent and

---

[2]
     The Trustee calculated this amount from Debtor's original Schedule F at $64,865.93.

[3]
     The "unsecured portion" column on Debtors' original Schedule D only adds up to $118,117.89. [Doc. #1, p. 14 of 66]. However, there are clearly math errors shown on the face of the document because the only collateral for all three mortgages is valued by Debtors at $115,000, making the first mortgage partially secured and partially unsecured and the second and third mortgages wholly unsecured according to Debtors' schedules. .

2

unliquidated.

The Sixth Circuit's decision in *In re Pearson*, 773 F.2d 751 (6th Cir. 1985), controls determination of the eligibility issue in this case. In *Pearson*, debtors' original schedules showed that their unsecured debt was within the then unsecured debt limit of $100,000. They scheduled the $127,000 debt of Comprehensive Accounting Corporation as partially secured and partially unsecured. The debt to Comprehensive arose out of debtors' guarantee of another entity's obligation. It was also the subject of a pre-petition arbitration award. Debtors then amended their schedules approximately two months after they filed their petition. This time, they scheduled Comprehensive as wholly unsecured, which would mean that their total unsecured debt exceed the § 109(e) eligibility limits. Comprehensive moved to dismiss based on the amended schedules, arguing that the Pearsons were not eligible Chapter 13 debtors.

The bankruptcy court rejected Comprehensive's argument, apparently on the grounds that the original schedules controlled the eligibility determination. The Sixth Circuit affirmed on the grounds that it was within the bankruptcy court's discretion to determine debtors' eligibility based solely on the original schedules. In so doing, the Sixth Circuit emphasized that the words of the statute direct that the determination be based on noncontingent, unliquidated unsecured debts "on the date of the filing of the petition." These words resulted in the further direction to bankruptcy courts, analogizing to the analysis required to determine whether diversity jurisdiction exists in the federal courts, that "Chapter 13 eligibility should normally be determined by the debtor's schedules, checking only to see if the schedules were made in good faith." *Id.*, 773 F.2d at 758.

The interpretation and application of *Pearson* is subject to subtle differences of opinion among bankruptcy courts within the Sixth Circuit. As one court noted, "*Pearson* is frequently misinterpreted as requiring in all cases that the court not engage in an inquiry as to whether the unsecured debts exceed the limit but instead inquire into whether the debtors believed in good faith that they were eligible for chapter 13 relief." *In re Mannor*, 175 B.R. 639, 641-42 (Bankr. E.D. Mich. 1994). Another court found that "*Pearson* does not mandate that the bankruptcy court's evaluation must be limited to only the schedules as originally filed." *In re Faulhaber*, 269 B.R. 348, 352 (Bankr. W. D. Mich. 2001). Yet another court interpreted *Pearson* as clarifying that "a court should rely on the schedules as of the date of filing and should look beyond the schedules only if the court determines that they were not filed in good faith." *In re Fuson*, 404 B.R. 872, 874 (Bankr. S.D. Ohio 2008). And another court has stated that *Pearson* makes the Debtor's bankruptcy petition and

3

schedules "the starting point in the Court's § 109(e) eligibility analysis" and that "[t]he schedules–even if filed in good faith–are not dispositive of a debtors' eligibility for Chapter 13 relief." *In re Smith*, 365 B.R. 770, 780 (Bankr. S.D. Ohio 2007).

The procedural directives that this court derives from *Pearson* for purposes of the instant inquiry into Debtors' debts "on the date of the filing of the petition" are that: (1) the schedules are unquestionably the starting point of the eligibility inquiry, but may also be the ending point under certain circumstances; (2) the word "normally" used with respect to reliance on schedules implies exceptions for the proper application of a court's discretion so long as the determination focuses on determining debts "on the date of filing," *In re Mannor*, 175 B.R. at 641-42; and (3) given the need for parties in interest to know § 109(e) eligibility early in a case, the eligibility determination should not depend on the claims allowance process (based on the Sixth Circuit's quoting with approval a case that states that the court considers debts as they exist at the time of filing, "not after a hearing") and turn into separate satellite litigation that dominates and delays the Chapter 13 proceedings, *In re Odette*, 347 B.R. 60, 62-63 (Bankr. E.D. Mich, 2006).

The court agrees with Debtors that in this case it is appropriate to consider their amended Schedule F, listing total debt of $60,454.96 instead of the original $210,428.99. The court finds persuasive the reasoning of *In re Faulhaber,* for the proposition that *Pearson* does not automatically prohibit court reliance on amended schedules, only that it was not an abuse of discretion for the bankruptcy court in *Pearson* not to rely on amended schedules based on the circumstances of that case. In this case, the $145, 562.05 in debts originally listed in Schedule F as contingent and unliquidated are debts of a failed family business venture, but for which there are not personal guarantees and liability would depend upon piercing the corporate veil or some other theory. *See* Doc. #1, Schedule H. Thus, the amended schedules do not change or attempt to change the debts for which Debtors were personally liable at the filing date, which is the focus of the statute. Rather, the amended Schedule F represents a more accurate legal judgment that they do not in fact have such liability as of the petition date based on the facts. The reasoning of *In re Odette* in application of the § 109(e) eligibility analysis is also persuasive to the court in the factual context at hand as to whether debts of a failed business should or should not routinely be included where there is no personal guarantee of those debts. Even if, as the Trustee asserts, these debts were originally improperly scheduled as contingent and unliquidated, *cf. In re Smith*, 365 B.R. at 781 (although the terms are not defined, cases universally hold that a debt is contingent if it does not become an obligation until

4

some future event, but is noncontingent when all of the acts giving rise to liability for the debt occurred before bankruptcy), the legal and factual judgment represented by amendment of Schedule F to assert that Debtors are not liable for any of these debts as of the filing date neither appears to be in bad faith nor inaccurate.

The court agrees with the Trustee, however, that it is appropriate to include the $9,500 debt owed to the Shoppes at Perry Junction that was scheduled in both the original and amended Schedule F as contingent and unliquidated in the total of noncontingent and liquidated debt for purposes of the § 109(e) eligibility determination. Debtors do not dispute that this debt is the subject of a state court judgment against them. *See* Doc. #1, SOFA , Q.4; *In re Smith*, 365 B.R. at 780-81 (court must make independent determination as to whether debts are contingent or unliquidated despite schedules); *see In re Mannor*, 175 B.R. at 641 (in a case where creditor had also obtained a pre-petition state court judgment against debtor, court holds that one of the exceptions to "normally" accepting schedules at face value is where it appears to a legal certainty that Debtors' schedules are wrong); *In re Rohl*, 298 B.R. 95, 103, 04 (Bankr. E.D. Mich. 2003). Debtors identify no other legal or factual basis that makes scheduling of this debt as contingent and unliquidated proper.

Thus, on the basis of Debtors' original Schedules, as amended on March 16, 2009, Debtors' total unsecured, unliquidated, noncontingent debts are $329,992.59 ($60,454.96 amended Schedule F debt total plus $269,537.63 in bifurcated unsecured debt from Schedule D[4]) and just within the $336,900 limits of eligibility of § 109(e).

Based on the foregoing and as otherwise stated on the record by the court, for good cause shown,

**IT IS ORDERED** that the Trustee's Chapter 13 Trustee's Motion to Dismiss Based Upon Debtor Exceeding Chapter 13 Unsecured Debt Limit under 11 U.S.C. § 109(e) [Doc. # 17] is denied in part, to the extent it requests dismissal due to noncompliance with the eligibility limits of 11 U.S.C. § 109(e), and continued for further proceedings as set by separate orders of the court to address good faith issues in connection with confirmation of Debtors' proposed plan.

---

[4]

No claim has been filed by the third mortgagee on account of a debt listed as $228,446.89 on Schedule D. Given the determination above, it is not necessary for the court to address at this time whether it is analytically proper under *Pearson* to consider the absence of the filed claim, as opposed to disallowance of filed claims.